355 S.E.2d 389

**Randy Gene SHREVE, et al.**

v.

**WARREN ASSOC., INC., et al.**

**Randy Gene SHREVE**

v.

**McKISSICK PRODUCTS, INC.**

No. 17038.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 14, 1987.
Decided March 19, 1987.

---

G. Charles Hughes, Moundsville, and William E. Watson, William E. Watson & Associates, Wellsburg, for appellants.

John H. Tinney, David B. Thomas, John R. Fowler and Mary S. Sanders, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellees.

MILLER, Justice:

In this appeal, we are asked to consider the propriety of the circuit court's assessment under Rule 37(d) of the West Virginia Rules of Civil Procedure of approximately $10,000 in legal fees and expenses against counsel for the plaintiffs based on their failure to timely answer interrogatories. We conclude the circuit court abused its discretion in ordering the assessment.[1]

The facts underlying the Rule 37(d) sanction are essentially not in dispute. The plaintiffs' attorneys originally instituted a product liability action on behalf of their clients, Randy and Anita Shreve. Randy Shreve had been injured in February, 1981, when a large hook on a drilling rig broke causing pieces of the equipment to strike his leg which resulted in a partial amputation of the leg. Suit was filed in December, 1982, against a number of defendants. The parties have in their briefs designated these original defendants as the "major defendants" and we will use this appellation.

After this first suit was filed, the plaintiffs' attorneys obtained, independently of any formal discovery, several invoices which led them to conclude that the defendant, McKissick Products, Inc. (McKissick), might have made the product involved in the accident. A second action was then filed in February, 1983, against McKissick and the two civil actions were consolidated in August, 1983.

At the time suit was filed against McKissick, the plaintiffs served interrogatories under Rule 33 and a request for production of documents under Rule 34. Subsequently, the plaintiffs' attorneys agreed with McKissick's attorneys to extend the time for McKissick's answer to the complaint and to the plaintiffs' discovery requests until April 15, 1983. An agreed order was entered to this effect on March 18, 1983. Thereafter, McKissick filed its answer and obtained a further agreement with the

---

1. The circuit court also ruled that the motion by McKissick Products, Inc., for attorney's fees and costs under Rule 11 of the Rules of Civil Procedure was inappropriate as the action against it was not filed in bad faith. *See Daily Gazette Co., Inc. v. Canady,* 175 W.Va. 249, 332 S.E.2d 262 (1985).

plaintiffs' counsel that it could generally delay its response to the plaintiffs' discovery requests. A formal order embodying this agreement was entered on September 8, 1983.

In December, 1983, McKissick filed and served a set of five interrogatories upon the plaintiffs. On December 19, 1983, the plaintiffs' attorneys filed a motion for an enlargement of time to respond to McKissick's interrogatories. This was based on their claim that they needed discovery from the major defendants who were subject to a number of plaintiffs' discovery motions which were pending before the court.[2]

In January, 1984, McKissick filed a motion to compel the plaintiffs to answer its interrogatories and the plaintiffs filed a motion to compel McKissick to answer the plaintiffs' interrogatories and request for documents. The plaintiffs claimed in their motion that McKissick's attorneys had violated the general agreement adopted between counsel that enabled McKissick to defer answering the plaintiffs' discovery motions until the plaintiffs had obtained additional discovery from the major defendants. The parties made these motions returnable to a hearing before the court on February 2, 1984. From the record before us, it does not appear that the February 2, 1984 hearing was held.[3]

Subsequently, in the spring and summer of 1984, the plaintiffs engaged in additional discovery against the major defendants including another set of interrogatories on McKissick.[4] On August 28, 1984, McKissick filed another motion to compel discovery against the plaintiffs and, in the alternative, a motion for summary judgment. A hearing on this motion as well as the earlier motions to compel discovery by the plaintiffs against the major defendants was held on October 2, 1984. The trial court took these motions under advisement.

On October 29, 1984, a status conference was held before the court, but no order was entered disposing of the pending motions between the plaintiffs and McKissick. The status conference order did reflect "that the Court indicated that it would rule upon the pending motions during the month of November, 1984." Apparently, the lack of any ruling caused McKissick on November 26, 1984, to serve another notice on the plaintiffs that it would renew its motion for summary judgment, motion to compel answers to interrogatories, and motion for fees for failure to respond to its interrogatories.

These motions were heard on December 18, 1984, and the judge, without objection from the plaintiffs, granted a summary judgment in favor of McKissick. The court took the discovery sanction request of McKissick under advisement and directed counsel for McKissick to submit an affidavit setting forth the costs and attorney's fees incurred.

Subsequently, in January, 1985, the major defendants settled with the plaintiffs and, about the same time, the circuit judge

---

**2.** The record shows that as of December 19, 1983, the plaintiffs' attorneys had filed the following motions in aid of discovery against the major defendants:

1. In February, 1983, they filed their first motion to compel discovery which related to the plaintiffs' initial interrogatories and requests for production of documents.

2. In August, 1983, a second motion to compel discovery was filed against the major defendants and this motion was heard on August 30, 1983. By order, the court gave two of the major defendants thirty days to comply and the other major defendants sixty days.

3. In early December, 1983, the plaintiffs filed motions to strike or to determine the sufficiency of some of the major defendants' objection to the plaintiffs' discovery motions. These matters were heard by the circuit court on De-

cember 15, 1983. The court took these motions under advisement at that hearing.

**3.** From entries in the fee bill of McKissick's attorneys, which is part of the record, it appears that this hearing was continued by the consent of both parties.

**4.** On May 30, 1984, a notice was served to take the depositions of Messrs. Blackburn and Michael, employees of one of the major defendants and these depositions were held in Charleston on July 11, 1984. On July 12, 1984, the plaintiffs served a request for admissions in regard to medical bills and records of the plaintiff. On July 24, 1984, and August 10, 1984, additional interrogatories were served on the major defendants as well as additional requests for admissions.

died. Another circuit judge was assigned to hear McKissick's motion for sanctions and a hearing was held on this matter in June, 1985. The court found in its October 15, 1985 order that the plaintiffs "offered no legally sufficient reason for their failure to respond to the proper interrogatories."

The court's assessment of attorney's fees and expenses incurred by McKissick was based, according to its October 15, 1985 order, on the time expended by McKissick's attorneys from "the filing of its Motion to Compel Discovery on January 9, 1984, up to and including the granting of McKissick's motion for summary judgment on December 18, 1984." This was found to be $10,098.78.

### I.

█ We initially dispose of the argument by the plaintiffs' attorneys that sanctions under Rule 37(d) could not be entered after McKissick had been dismissed from the case by summary judgment. This proposition would be correct if McKissick had made no Rule 37(d) motion prior to its dismissal from the case. In *Butler v. Pettigrew*, 409 F.2d 1205 (7th Cir.1969), the Seventh Circuit without any extended discussion held that a party's attempt to get Rule 37 sanctions after it was dismissed from the case was untimely. *See also Molina v. El Paso Independent School District*, 583 F.2d 213 (5th Cir.1978); *Popeil Bros., Inc. v. Schick Electric, Inc.*, 516 F.2d 772 (7th Cir.1975).

In the present case, however, McKissick had made its motion well before the summary judgment and the circuit court had by order specifically deferred ruling on it until a later time. Under these circumstances, McKissick was not precluded from pursuing its motion.

### II.

█ Turning to the merits, it cannot be doubted that Rule 37 is designed to provide sanctions in order to ensure that those persons who are subject to discovery requests promptly and adequately respond. We said in *Prager v. Meckling*, 172 W.Va. 785, 788, 310 S.E.2d 852, 854 (1983):

> "Ordinarily, Rule 37 is designed to permit the use of sanctions against a party who refuses to comply with the discovery rules, i.e., Rules 26 through 36."

Rule 37 also recognizes that the derelict party can avoid the sanctions of paying expenses, including attorney's fees, by showing that his conduct was "substantially justified" or that such an award would be "unjust." [5] This language occurs in Rule 37(a)(4), in Rule 37(b)(2)(E), and in Rule 37(d), this latter section being applicable to this case.[6] Recently, we spoke to the utilization of sanctions under Rule 37(d) in

---

**5.** In *Prager,* we pointed out in Syllabus Points 1 and 2 the major differences in applying for sanctions under Rule 37. Generally, the party pressing to obtain discovery must file a motion under Rule 37(a)(2) for a court order to compel the discovery. If he prevails on this motion and obtains an order, he is entitled under Rule 37(a)(4) to obtain "reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was *substantially justified* or that other circumstances make an award of expenses unjust." (Emphasis added).

After such an order compelling discovery is obtained, if it is violated, then under Rule 37(b), a court is empowered to impose a variety of different sanctions including under Rule 37(b)(2)(E) "reasonable expenses" subject to the same limitation noted above under Rule 37(a)(4) as to substantial justification or that such an award would be unjust.

As noted in Syllabus Point 2 of *Prager,* where a party is involved, if he fails to attend his own deposition or to answer or object to interrogatories served upon him or a request for inspection under Rule 34, then the party requesting discovery may move the court directly for sanctions without the necessity of obtaining a prior order to compel discovery. Under Rule 37(d), if expenses are sought, including attorney's fees, the "substantial justification" and "unjust" defenses are available.

**6.** In note 6 of *Vincent v. Preiser,* 175 W.Va. 797, 801, 338 S.E.2d 398, 401 (1985), we indicated that an "award of reasonable expenses, including attorney fees, is mandatory" where there has been a failure to comply with an order to provide discovery unless the court finds such an award would be unjust. The court in the text considered at some length whether the neglect could be substantially justified based on a good faith argument. Thus, the two defenses to a motion for sanctions, discussed in note 4, *supra,* i.e., "substantial justification" for the neglect and "unjustness," were recognized.

*Michael v. Henry*, 177 W.Va. 494, 354 S.E.2d 590 (1987), and concluded that they were inappropriate as plaintiff's counsel had a justifiable reason for delaying his answers to the defendant's interrogatories and stated this general rule in Syllabus Point 4:

> "*W.Va.R.Civ.P.* 37(d) permits a trial court to assess attorneys' fees against a party failing to answer interrogatories 'unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.' *W.Va.R.Civ.P.* 37(d)."

Other guidelines emerge from court decisions involving an award of reasonable expenses, including attorney's fees, under Rule 37. First, the reasonable expenses, including attorney's fees, are subject to court review as to reasonableness and are ordinarily confined to expenses incurred in obtaining the derelict discovery and those expenses caused by the failure to promptly obtain the discovery material.[7] Second, the defaulting party has the burden of proving that his failure to supply the requested discovery was substantially justified or that other circumstances would make an award of expenses unjust.[8] Third, a trial court's action in setting an award is subject to review for an abuse of discretion.[9] As in most cases involving discovery, sanctions must depend on the facts of the individual case.

Here, at least several of the interrogatories posed by McKissick are what may be categorized as "contention interrogatories."[10] Our Rule 33(b), as well as Rule 33(b) of the Federal Rules of Civil Procedure, recognizes that:

> "An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time."

As the notes of the Advisory Committee on the federal rules state, prior to 1970 when this language was added "[t]here ... [were] numerous and conflicting decisions on the question whether and to what extent interrogatories are limited to matters 'of fact,' or may elicit opinions, contentions, and legal conclusions."

The purpose of the 1970 amendment was to establish that contention interrogatories are not per se objectionable and to provide a mechanism for a court to defer the answering of them until the opposing party had an opportunity to complete designated discovery. This deferral of answering is

---

**7.** *E.g., Stillman v. Edmund Scientific Co.*, 522 F.2d 798 (4th Cir.1975); *Dorey v. Dorey*, 609 F.2d 1128 (5th Cir.1980); *Bates v. Firestone Tire and Rubber Co., Inc.*, 83 F.R.D. 535 (D.S.C.1979); *Addington v. Mid-American Lines*, 77 F.R.D. 750 (W.D.Mo.1978); *Associated Radio Service Co. v. Page Airways, Inc.*, 73 F.R.D. 633 (D.Tex.1977); *Humphreys Exterminating Co., Inc. v. Poulter*, 62 F.R.D. 392 (D.Md.1974).

**8.** *E.g., Sneirson v. Chemical Bank*, 108 F.R.D. 159 (D.Del.1985); *American Hangar, Inc. v. Basic Line, Inc.*, 105 F.R.D. 173 (D.Mass.1985); *Brown v. United States Elevator Corp.*, 102 F.R.D. 526 (D.D.C.1984); *Bader v. Fisher*, 504 A.2d 1091 (Del.Super.Ct.1986); *Battryn v. Indian Oil Co., Inc.*, 472 A.2d 937 (Me.1984); 4A J. Moore, J. Lucas, and D. Epstein, Moore's Federal Practice ¶ 37.02[10] at 37–49 (1984).

**9.** *E.g., Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334 (9th Cir.1985); Syllabus Point 1, *Bell v. Inland Mutual Ins. Co.*, 175

W.Va. 165, 332 S.E.2d 127, *cert. denied*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985).

**10.** Contention interrogatories have been broadly defined in *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332 (N.D.Cal. 1985), as:

> "Some people would classify as a contention interrogatory any question that asks another party to indicate *what* it contends [or] ... questions that ask another party *whether* it makes some specified contention [or that] ... asks an opposing party to state all the *facts* on which it *bases* some specified contention [or] ... asks an opponent to state all the *evidence* on which it *bases* some specified contention. Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to *how the law applies to facts* [or] ... that ask parties to spell out the *legal basis* for, or theory behind, some specified contention." (Emphasis in original).

permitted in recognition of the fact that often in a complicated suit, the plaintiff is unable to pinpoint initially all of the relevant facts that will support the various theories of liability. *See generally* 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2167 at 497–515 (1970). This point is aptly summarized in K. Sinclair, Federal Civil Practice 709 (2d ed. 1986), as follows:

"As with interrogatories asking for contentions related to facts, courts ought to be more sympathetic with a party's stated unwillingness or inability to give his opinions at the outset of a case than after there has been substantial discovery. The requirement to state opinions can well contribute to the simplification of issues and the discovery of admissible evidence and, depending on the nature of the interrogatory and the case, once a party has had an opportunity to avail himself of discovery, he ought to be required to state opinions in response to interrogatories."

Even in the absence of an express finding that they were contention interrogatories, there is a general provision for extending time to answer interrogatories. Rule 33(a), after setting thirty days as the normal time period to answer interrogatories, provides: "The court may allow a shorter or longer time." This same language appears in Rule 34(b). In 4A J. Moore, J. Lucas, and D. Epstein, Moore's Federal Practice ¶ 33.24, 33–126 (1984), this comment is made about the same provision in the federal rules of civil procedure:

"The court may enlarge or shorten the time for answer. Thus where the case was about to go to trial the court ordered answers to be served within five days. The time to answer may be extended when the party needs additional time to obtain the information, or for any reason

that would justify a stay of the taking of depositions." (Footnote omitted).

This case differs from the usual Rule 37 sanction case where there has been a complete failure to respond to discovery initially.[11] Here, the plaintiffs made a timely motion to delay answering McKissick's interrogatories setting out their reasons for needing a delay. We are not cited nor have we discovered a case where a party has timely moved to delay responding to discovery and has been required to pay the expenses and attorney's fees of the opposing party when the court did not initially rule on the motion.[12]

In *Fjelstad v. American Honda Motor Co. Inc.*, 762 F.2d 1334, 1339 (9th Cir.1985), the Ninth Circuit set aside a Rule 37(d) sanction because the party had objected to answering some of the interrogatories and the district court had never ruled on the objections before entering sanctions. The court's final order in this case contains the same deficiency as it proceeds on the erroneous basis that the plaintiffs made no response to McKissick's interrogatories. Yet, it is clear that a written motion was made on December 19, 1983, to enlarge the time until they could obtain their pending discovery against the major defendants. This, we believe, was an appropriate response under Rule 33 and required some resolution by the trial court.

■ It must be remembered that sanctions for costs and attorney's fees for failure to comply with discovery under Rule 37 are not a substitute for Rule 11 costs and attorney's fees where there has been the bad faith filing of pleadings. Consistent with the language of Rule 37, courts have traditionally held that the fees and expenses are limited to those arising from the

11. *E.g., M & D Builders, Inc. v. Peck,* 109 F.R.D. 410 (D.Mass.1986); *Brown v. United States Elevator Co., supra; Battryn v. Indian Oil Co. Inc., supra.*

12. *Bell v. Automobile Club of Michigan,* 80 F.R.D. 228 (E.D.Mich.1978), is heavily relied upon by McKissick, but is entirely distinguishable. In that case, the defendant had in its

interrogatory answers concealed information and mislead the plaintiffs into believing there was no compilation of the material sought. After the plaintiffs embarked on extensive discovery depositions, they became aware that the material was available in compilation form. The court awarded Rule 37 fees and costs for the attorneys' time and expenses incurred in the extra discovery.

refusal to respond to the discovery request.[13]

 Our Rule 37(d) provides, in part, that "the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, *caused by the failure,* unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added). Thus, in the ordinary case, fees and costs are given for the time spent in obtaining through Rule 37 procedures the discovery that has not been furnished. It was an abuse of discretion in this case to permit McKissick to obtain all their attorney's fees from the date of the filing of the initial sanction motion, as much of those fees were not related to the procurement of the discovery.

 In the present case, the sanction issue is exacerbated by the long delay in ruling on the question. The parties attended several hearings before the original trial judge which took place over almost a one-year period. A fourth hearing was held in June, 1985, with the special judge assigned to hear this matter. The goal of prompt discovery is not advanced when a court delays acting on discovery objections. Where discovery delay is occasioned by a court's failure to rule on Rule 37 motions, which forces multiple hearings to obtain a ruling, we believe it is "unjust" within the meaning of Rule 37(d) to assess the additional costs and attorney's fees incurred in obtaining a ruling against the losing party.

 Finally, we conclude that the plaintiffs' original motion to postpone answering the interrogatories had merit because they needed information in the possession of the major defendants to pinpoint McKissick's responsibility. The record indicates that the plaintiffs were diligently pursuing discovery against the major defendants to confirm McKissick's role in the accident. The plaintiffs were hampered in their discovery efforts against the major defendants who they claimed were making inadequate responses. It appears that once these responses were made, the plaintiffs' attorneys recognized that they did not have a provable case against McKissick and did not object to its dismissal by way of a summary judgment.

For the foregoing reasons, we conclude that sanctions in this case were inappropriate and we, therefore, reverse the judgment of the Circuit Court of Ritchie County.

Reversed.