584 S.E.2d 560

Patricia HANNAH, Sabrina Brown, Pamela J. Nagle, Brenda Christian, and Darla Jeffrey, Plaintiffs,

v.

David P. HEETER, Individually and Heeter Construction, Inc., a West Virginia Corporation, Defendants,

v.

Patricia Hannah (Cazin), and Ermil Hannah, Third–Party Defendants.

No. 30962.

Supreme Court of Appeals of West Virginia.

Submitted March 25, 2003.

Decided June 30, 2003.

Lonnie C. Simmons, Esq., Lia M. DiTrapano, Esq., DiTrapano, Barrett & DiPiero, Charleston, for Plaintiffs.

James M. Cagle, Esq., Charleston, for Defendants.

MAYNARD, Justice.

We are called upon to answer certified questions from the Circuit Court of Logan County regarding the viability of independent torts for spoliation of evidence. In the exercise of our discretion, we reformulate the certified questions as follows: [1]

1. Whether West Virginia recognizes spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action.

2. Whether West Virginia recognizes spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a third party, and the third party had a special duty to preserve the evidence.[2]

3. Whether West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party.[3]

---

[1]. In Syllabus Point 3 of *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993), we held:

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* and *W.Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

[2]. In this opinion, we refer to a nonparty to the underlying civil action in which the spoliated evidence was unavailable as a third party.

[3]. The circuit court asked, first, "[w]hether West Virginia recognizes spoliation of evidence as a stand-alone tort if and when negligently done by a party to a civil action and/or those acting in concert with parties to a civil action[.]" The circuit court answered the question in the negative. Second, the circuit court asked "[w]hether West Virginia recognizes spoliation of evidence as a stand-alone tort if and when wilfully and purposefully done by a party to a civil action and/or those acting in concert with parties to a civil action[.]" The circuit court also answered this question in the negative.

## I.

## FACTS

Patricia Hannah is a plaintiff[4] and David Heeter, the President of Heeter Construction Company, and Heeter Construction Company are defendants in a sexual harassment lawsuit. Specifically, Ms. Hannah alleges that in August 2000, she approached David Heeter at his office in Man, West Virginia, about a job as a flagger on a highway crew. She and Mr. Heeter apparently had several conversations about the job, the last of which was secretly recorded on audiotape by Ms. Hannah. According to Ms. Hannah, the audiotape of this conversation supports her claims that Mr. Heeter suggested that he would hire her in exchange for a sexual relationship.

During discovery, Ms. Hannah produced, at the request of the defendants, an audiotape of the conversation between her and Mr. Heeter. The defendants submitted this audiotape to an expert to determine whether it had been altered. The expert informed the defendants that the audiotape submitted was not the original, and that without the original he was unable to properly analyze the audiotape.

Consequently, the defendants filed a motion to compel production of the original audiotape. At a hearing on this motion, evidence was adduced that when Patricia Hannah moved from her ex-husband's residence, she left the original audiotape there. Ermil Hannah, Patricia Hannah's mother, testified that she lived directly across the street from Patricia Hannah's ex-husband, and that he had contacted her numerous times about the audiotape. Ermil Hannah further testified that her granddaughter, who is Patricia Hannah's daughter, brought her the audiotape, and Ermil Hannah destroyed it in order to avoid further contact with Patricia Hannah's ex-husband.

The defendants thereafter filed a counterclaim against Patricia and Ermil Hannah in which they alleged several causes of action, two of which are negligent and intentional spoliation of evidence. They then filed a motion for partial summary judgment as to liability on the spoliation claims. At a hearing on the motion, the defendants moved the circuit court to certify two questions to this Court concerning the viability of these claims.[5] The circuit court denied the defendants' motion for partial summary judgment and certified the questions.

## II.

## STANDARD OF REVIEW

■ "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

## DISCUSSION

### A.

### *Propriety of Certification*

■ Initially, we must determine whether it is proper for this Court to answer the certified questions under the instant facts. Ms. Hannah asserts that the certified questions should not be accepted because they fail to meet the requirement set forth in Syllabus Point 5 of *Bass v. Coltelli,* 192 W.Va. 516, 453 S.E.2d 350 (1994),[6] that the legal issues substantially control the case. Ms. Hannah further argues that the issue of the viability of a spoliation tort does not substantially control the sexual harassment suit because the audiotape was not destroyed by a party to the suit. In addition, the counterclaim for spoliation affects only one of the five plaintiffs involved in the harassment suit. Therefore, she concludes that this Court should decline to answer the certified questions.

■ According to W.Va.Code § 58-5-2 (1998), in part, "[a]ny question of law, including ... questions arising upon the ... sufficiency of a motion for summary judgment

---

**4.** In addition to Ms. Hannah, there are four other plaintiffs in the sexual harassment lawsuit.

**5.** *See* footnote 3, *supra.*

**6.** *See infra.*

where such motion is denied ... may ... be certified ... to the supreme court of appeals[.]" These certified questions come to us as the result of the circuit court's denial of the defendants' motion for partial summary judgment. According to Syllabus Point 5 of *Bass v. Coltelli, supra:*

> West Virginia Code, 58–5–2 (1967),[7] allows for certification of a question arising from a denial of a motion for summary judgment. However, such certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case. (Footnote added).

We believe that it is proper for this Court to answer the certified questions before us. While these questions do not substantially control the sexual harassment suit filed by the five plaintiffs below, they do substantially control the viability of Mr. Heeter's counterclaims for spoliation. Further, the undisputed facts show that evidence which is relevant to a civil action was destroyed. We conclude, therefore, that the certified questions meet the requirements articulated in Syllabus Point 5 of *Bass.*

### B.

### General Principles

■ The questions presented concern the viability of torts which this Court previously has not recognized. In considering these issues, we are mindful that "[f]or every wrong there is supposed to be a remedy somewhere." *Sanders v. Meredith,* 78 W.Va. 564, 572, 89 S.E. 733, 736 (1916). This Court has opined that "[t]he concept of American justice ... pronounces that for every wrong there is a remedy. It is incompatible with this concept to deprive a wrongfully injured party of a remedy[.]" *O'Neil v. City of Par-*

*kersburg,* 160 W.Va. 694, 697, 237 S.E.2d 504, 506 (1977) (citation omitted). *See also Gardner v. Buckeye Sav. & Loan Co.,* 108 W.Va. 673, 680, 152 S.E. 530, 533 (1930) ("It is the proud boast of all lovers of justice that for every wrong there is a remedy."). Accordingly, one of our considerations in answering the certified questions is whether a sufficient remedy already exists for the conduct at issue.

■ We are also mindful that recognizing tortious conduct as actionable serves additional purposes beyond providing a remedy to the person injured by the tortious conduct. While it is true that "[t]he object of tort law is to provide reasonable compensation for losses[,]" *Roberts v. Stevens Clinic Hosp., Inc.,* 176 W.Va. 492, 504, 345 S.E.2d 791, 803 (1986), additional foundations of tort law are morality and deterrence. *See* Bart S. Wilhoit, *Spoliation Of Evidence: The Viability Of Four Emerging Torts,* 46 UCLA L.Rev. 631, 662 (1998) ("It is generally accepted that the three fundamentals of tort law are morality, compensation, and deterrence." (Footnote omitted)). Therefore, in answering the questions before us, we will also consider the level of condemnation and deterrence that may be required as a sufficient response to the conduct at issue. We now proceed to address the specific questions posed in light of these guidelines.

### C.

### Nonviability of a Tort for Negligent Spoliation by a Party

■ We answer the first certified question in the negative, and hold that West Virginia does not recognize spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action.[8] "It is a fundamental princi-

---

7. W.Va.Code § 58–5–2 was amended in 1998, and, as noted above, the amended version continues to allow for certification of a question arising from a denial of a motion for summary judgment.

8. More than twenty-six jurisdictions have addressed the issue of whether to adopt an independent tort for the spoliation of evidence. *See* Sean R. Levine, Note, *Spoliation Of Evidence In*

*West Virginia: Do Too Many Torts Spoliate The Broth?"* 104 W.Va. L.Rev. 419 (Winter 2002). "[M]ost jurisdictions that have addressed the issue have not adopted the tort, holding either that spoliation is better remedied by existing case law, or that the court might recognize such a tort, but that it would be inapplicable under the facts of the matter before the court at the time." Levine, 104 W.Va.L.Rev. at 421 (footnotes omitted). *See, e.g., Timber Tech Engineered Building*

ple of law that a party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Tracy v. Cottrell*, 206 W.Va. 363, 371, 524 S.E.2d 879, 887 (1999) (citation omitted). However, we believe that when the alleged spoliator is a party to the underlying litigation, sufficient remedies already exist to compensate the party injured by the negligent spoliation. In *Tracy*, we concluded that under appropriate circumstances, an adverse inference instruction may be given or sanctions levied where physical evidence was destroyed by a party to an action. In Syllabus Point 2 of *Tracy*, we held:

> Before a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence. The party requesting the adverse inference jury instruction

based upon spoliation of evidence has the burden of proof on each element of the four-factor spoliation test. If, however, the trial court finds that the party charged with spoliation of evidence did not control, own, possess, or have authority over the destroyed evidence, the requisite analysis ends, and no adverse inference instruction may be given or other sanction imposed.

 In addition to an adverse inference instruction, the sanctions under our Rules of Civil Procedure for the failure to disclose evidence are potent. "Rule 37 of the West Virginia Rules of Civil Procedure is designed to permit the use of sanctions against a party who refuses to comply with the discovery rules, i.e., Rules 26 through 36." Syllabus Point 1, *Shreve v. Warren Assoc., Inc.*, 177 W.Va. 600, 355 S.E.2d 389 (1987). Specifically, under Rule 37(b)(2) of the West Virginia Rules of Civil Procedure, if a party fails to respond to a request for inspection under Rule 34, the circuit court in which the action is pending may, on motion, enter:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

*Products v. The Home Ins. Co.*, 55 P.3d 952 (Nev.2002) (citing the usefulness of spoliation claims against the burdens associated with permitting them including the burden to litigants, witnesses, and the judicial system imposed by potentially endless litigation over a speculative loss, and by the cost of society of promoting onerous record and evidence retention policies); *Goff v. Harold Ives Trucking Co., Inc.*, 342 Ark. 143, 150, 27 S.W.3d 387, 391 (2000) (finding it unnecessary "to create a new tort out of whole cloth in order to provide a party with a remedy."); *Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex.1998) (the "traditional response to the problem of evidence spoliation [a negative inference against the wrongdoer] properly frames the alleged wrong as an evidentiary concept, not a separate cause of action."); *Meyn v. State*, 594 N.W.2d 31 (Iowa 1999) (rejecting the tort because it creates endless litigation, it is difficult to impose on a stranger to the litigation a duty to preserve evidence, and it is speculative in nature); *Christian v. Kenneth Chandler Const. Co.*, 658 So.2d 408 (Ala.1995) (declining to recognize an independent tort of spoliation of evidence);

*La Raia v. Superior Court*, 150 Ariz. 118, 121, 722 P.2d 286, 289 (1986) ("There is no need to invoke esoteric theories or recognize some new tort."); *Gardner v. Blackston*, 185 Ga.App. 754, 755, 365 S.E.2d 545, 546 (1988) ("Georgia law [does not] recognize spoliation of evidence as a separate tort[.]"); *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177 (1987); *Elias v. Lancaster Gen. Hosp.*, 710 A.2d 65 (Pa.Super.1998); *Reilly v. D'Errico*, 1994 WL 547671 (Conn.Super.Ct. Sept. 21, 1994); *Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 923 P.2d 416 (1996); *Petrik v. Monarch Printing Corp.*, 150 Ill.App.3d 248, 103 Ill.Dec. 774, 501 N.E.2d 1312 (1986); *Brown v. Hamid*, 856 S.W.2d 51 (Mo.1993); *Rodriguez v. Webb*, 141 N.H. 177, 680 A.2d 604 (1996); *Austin v. Consolidation Coal*, 256 Va. 78, 501 S.E.2d 161 (1998).

Further, "there appears to be a trend away from acceptance of the tort among jurisdictions, at least when such a claim is brought against an adverse party to the original suit." Levine, 104 W.Va.L.Rev. at 421–22 (footnote omitted).

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; [or]

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order [compelling discovery] is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

We believe that the adverse inference instruction and the sanctions provided by W.Va.R.C.P. 37 are sufficient remedies when a party to an action negligently fails in his or her duty to preserve relevant evidence.

### D.

### Viability of a Tort for Negligent Spoliation by a Third Party

■ We answer the second certified question in the affirmative and hold that West Virginia recognizes spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a third party, and the third party had a special duty to preserve the evidence. Unlike a party to a civil action, a third party spoliator is not subject to an adverse inference instruction or discovery sanctions. Thus, when a third party destroys evidence, the party who is injured by the spoliation does not have the benefit of existing remedies. Such a result conflicts with our policy of providing a remedy for every wrong and compensating victims of tortious conduct. Accordingly, we believe that the negligent spoliation of evidence by a third party ought to be actionable in certain circumstances.

■ It is generally agreed that recognizing a tort of negligent spoliation against a third party is problematic absent some type of affirmative duty to preserve the evidence. Under our tort law, "[i]n order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in viola-

tion of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syllabus Point 1, *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981). However, "there is no general duty to preserve evidence[.]" *Smith v. Atkinson*, 771 So.2d 429, 433 (Ala.2000). An additional problem arises where the destroyed evidence is the property of the alleged third-party spoliator.[9] "A property owner normally has the right to control and dispose of his property as he sees fit. The owner of the property may legitimately question what right a plaintiff has to direct control over such property." *Oliver v. Stimson Lumber Co.*, 297 Mont. 336, 345, 993 P.2d 11, 18 (1999). As noted by one commentator:

[I]n situations in which the evidence is owned by the third party, individual autonomy is a heavy factor in favor of the spoliator in negligent spoliation by a third party. According to the individual autonomy theory, tort liability for spoliation interferes with individual property rights. Tort liability against a third party in negligent spoliation would prohibit a third party from destroying or altering evidence, which the third party owns, for a justifiable reason such as safety concerns or a desire to control the costs of preservation.

Wilhoit, *Spoliation Of Evidence: The Viability Of Four Emerging Torts*, 46 UCLA L.Rev. at 671 (footnote omitted). *See also Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 651, 905 P.2d 185, 191 (N.M.1995), *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (N.M.2001), ("We hold that in the absence of [certain enumerated circumstances] a property owner has no duty to preserve or safeguard his or her property for the benefit of other individuals in a potential lawsuit."); *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 208–209, 734 P.2d 1177, 1179 (1987) ("When negligence is the basis of the suit alleging an economic injury resulting from the destruction of evidence, a duty on behalf of the defendant arising from the relationship between the parties or some other special

---

9. These are not the facts in the instant case where Patricia Hannah, a party to the sexual

harassment lawsuit, not Ermil Hannah, was the owner of the audiotape.

circumstance must exist in order for the cause of action to survive.").

■ Some courts, however, have recognized a cause of action against a third party who negligently destroys evidence when the third party had a special duty to preserve the evidence. For example, in *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267 (1995), the Supreme Court of Illinois declined to create a new tort of spoliation but found that an action for negligent spoliation could be stated under existing negligence law. The court held:

> The general rule is that there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute or another special circumstance. Moreover, a defendant may voluntarily assume a duty by affirmative conduct. In any of the foregoing instances, a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.

*Boyd*, 166 Ill.2d at 195, 209 Ill.Dec. at 730–31, 652 N.E.2d at 270–71 (citations omitted). Likewise, in *Holmes v. Amerex Rent–A–Car*, 710 A.2d 846 (D.C.1998), the District of Columbia Court of Appeals recognized a spoliation tort and applied it to third parties. The court explained:

> There is no general duty in the common law to preserve evidence in a third-party spoliation situation. "Absent some special relationship or duty rising by reason of an agreement, contract, statute, or other special circumstance, the general rule is that there is no duty to preserve possible evidence for another party to aid that other party in some future legal action against a third party." *Koplin v. Rosel Well Perforators*, 241 Kan. 206, 734 P.2d 1177, 1179 (1987). For a spoliation claim to succeed in negligence, therefore, the plaintiff must establish the existence of such a "special relationship" that creates a duty to preserve the evidence for use in the future litigation.

*Holmes*, 710 A.2d at 849. We agree with these courts and hold that a duty to preserve evidence for a pending or potential civil action may arise in a third party to a civil action through a contract, agreement, statute, administrative rule, voluntary assumption of duty by the third party, or other special circumstances.

Various elements have been included in a negligent spoliation tort. In *Oliver*, 297 Mont. at 348, 993 P.2d at 19, the Supreme Court of Montana articulated the following elements:

> (1) existence of a potential civil action;
>
> (2) a legal or contractual duty to preserve evidence relevant to that action;
>
> (3) destruction of that evidence;
>
> (4) significant impairment of the ability to prove the potential civil action;
>
> (5) a causal connection between the destruction of the evidence and the inability to prove the lawsuit;
>
> (6) a significant possibility of success of the potential civil action if the evidence were available; and
>
> (7) damages. (Citations omitted).

The Supreme Court of Alabama, in *Smith v. Atkinson*, 771 So.2d 429, 432–33 (Ala.2000), explained:

> In addition to proving a duty, a breach, proximate cause, and damage, the plaintiff in a third-party spoliation case must also show: (1) that the defendant spoliator had actual knowledge of pending or potential litigation; (2) that a duty was imposed upon the defendant through a voluntary undertaking, an agreement, or a specific request; and (3) that the missing evidence was vital to the plaintiff's pending or potential action. Once all three of these elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence the plaintiff would have recovered in the pending or potential litigation; the defendant must overcome that rebuttable presumption or else be liable for damages.

■ Accordingly, we hold that the tort of negligent spoliation of evidence by a third party consists of the following elements: (1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or po-

tential civil action; (3) a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in a pending or potential civil action; and (6) damages. Once the first five elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The third-party spoliator must overcome the rebuttable presumption or else be liable for damages.

■■■■■ We emphasize that a third party must have had *actual* knowledge of the pending or potential litigation. "[A] third party's constructive notice of a pending or potential action is not sufficient to force upon the third party the duty to preserve evidence." *Smith,* 771 So.2d at 433 (citation omitted). In addition,

Not every piece of lost or destroyed evidence should lead to a cause of action for negligent spoliation. Where the destruction or loss of evidence defeats any chance of the plaintiff's recovering in the underlying action, we conclude that the plaintiff deserves recourse for such a loss. Therefore, under a claim for negligent spoliation, the defendant's breach must be the proximate cause of the plaintiff's inability to file, or to win, the underlying lawsuit.

*Smith,* 771 So.2d at 434. In proving the element of proximate cause, we adopt the reasoning of the court in *Smith* that,

in order for a plaintiff to show proximate cause, the trier of fact must determine that the lost or destroyed evidence was so im-

portant to the plaintiff's claim in the underlying action that without that evidence the claim did not survive or would not have survived a motion for summary judgment.... Metropolitan argues that a plaintiff, in order to be able to file an action alleging spoliation of evidence against a third party, must first file an action pursuing the underlying cause of action and be denied a recovery in that underlying action. We disagree. If we use the summary-judgment standard as a guide, there will be no need for a plaintiff to waste valuable judicial resources by filing a futile complaint and risking sanctions for filing frivolous litigation. The plaintiff can rely upon either a copy of a judgment against him in an underlying action or upon a showing that, without the lost or destroyed evidence, a summary judgment would have been entered for the defendant in the underlying action.

771 So.2d at 434. Therefore, a plaintiff in a spoliation claim does not have to file an action in which the spoliated evidence would have been vital to proving or defending his or her case. Instead, he or she simply may show that without the spoliated evidence, a summary judgment would have been entered on behalf of the adverse party in the underlying action.

■■■■■ The determination of damages in a claim for spoliation of evidence is generally considered to be a task fraught with uncertainty and speculation. In fact, a "strong counterargument to compensation [in spoliation cases] is the inherent difficulty of proving the *fact* of injury in a spoliation suit." Levine, 104 W.Va.L.Rev. at 440 (footnote omitted). Courts have adopted a myriad of methods to assess damages.[10] In addressing

---

**10.** In *Holmes v. Amerex Rent–A–Car, supra,* the court observed:

One possibility is to award the plaintiff the entire amount of damages that the plaintiff would have received if the original lawsuit had been pursued successfully. 3 JEROME H. NATES, *et al., DAMAGES IN TORT ACTIONS* § 19.33(3) (1997); *see Petrik [v. Monarch Printing Corp.,* 150 Ill.App.3d 248, 260–61, 103 Ill. Dec. 774, 782–83, 501 N.E.2d 1312, 1320–21 (1987)]. The problem with this approach, however, is that it ignores defendant's interest in not providing the plaintiff with a windfall

recovery. "If this method is utilized, there is the potential that the plaintiff would benefit more in an instance of spoliation than he might have in the underlying suit." NATES, *supra,* § 19.33(3).

A second possibility is only to award the plaintiff any costs and fees incurred in pursuit of the original suit. This method, however, fails to "adequately 'punish' the offending parties or adequately compensate the party who is now apparently unable to pursue its cause of action." NATES, *supra,* § 19.33(3). Under

the problem of damages, we are guided by "the general rule in awarding damages [which] is to give compensation for pecuniary loss; that is, to put the plaintiff in the same position, so far as money can do it, as he would have been if ... the tort [had] not [been] committed." 5C Michie's Jurisprudence, *Damages* § 18, at 63 (1998) (footnote omitted). We believe that the approach utilized by the Alabama court in *Smith* would best achieve this result. There the court explained:

> under the [rebuttable presumption] approach we adopt today, the risk of a windfall to the plaintiff has been minimized. We decline to gauge damages on the plaintiff's probability of success on the merits. We conclude that without the spoliated evidence, the plaintiff's probability of success is too tenuous a measure to be consistently applied and that any attempt to apply it would constitute pure speculation. Therefore, in determining damages, we reject the use of probability of success as a benchmark, in favor of the use of compensatory damages that would have been awarded on the underlying cause of action, if the defendant cannot overcome the rebuttable presumption.

this approach, the plaintiff's interest in securing the precluded recovery is ignored.

Another possibility, one that attempts a balancing of interests in light of the inherent uncertainties of proof relevant to this tort, was suggested by an Illinois appellate court. This approach requires that damages be discounted to account for uncertainties.

> One possible measure of damages, therefore, could be the damages that would have been obtained in the underlying lawsuit, multiplied by the probability that plaintiff would have won the suit had he had the spoliated evidence.

*Petrik, supra,* 103 Ill.Dec. at 782, 501 N.E.2d at 1320.

This compromise system would apportion risk between the two parties in an equitable fashion. On the one hand, the plaintiff's interest in recovering the expected but precluded sum is protected because recovery is allowed with lower standards of proof for causation and damages. On the other hand, the defendant's interest in only compensating a plaintiff for actual loss is protected because the recovery will be lessened by the uncertainties involved. Both parties, then, accept some of the risk of windfall or shortage necessitated by the uncertainty inherent in proving this tort.

*Smith,* 771 So.2d at 438. Therefore, if a spoliator cannot rebut the presumption that the injured party would have prevailed in the underlying litigation but for the spoliation, the spoliator must compensate the party injured by the spoliation for the loss suffered as a result of his or her failure to prevail in the underlying litigation.

### *E.*

### *Viability of the Tort of Intentional Spoliation of Evidence*

██ We answer the third certified question in the affirmative and hold that West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party. Our reasoning for the need to hold third parties liable for negligently spoliating evidence is also applicable here. That is, recovery under a separate tort is necessary because a third party is not subject to an adverse inference instruction or discovery sanctions. In regard to a party to a civil action, we believe that intentional spoliation of evidence is misconduct of such a serious nature, the existing remedies are not a sufficient response.[11]

> The problem with this method is in the difficulty of "proving what the spoliated evidence would have demonstrated and the extent to which it would have changed the outcome." NATES, *supra,* § 19.33(3). However, that problem is endemic to the tort of spoliation, and we are unconvinced that the problem is sufficient to overcome the overall fairness of the discounted damages approach.
> *Holmes,* 710 A.2d at 853.

11. Of the twenty-six jurisdictions which have addressed the issue, "seven have recognized the tort in situations of intentional spoliation[.]" Levine, 104 W.Va.L.Rev. at 421 (footnote omitted). These include *Hazen v. Municipality of Anchorage,* 718 P.2d 456 (Alaska 1986); *Hirsch v. General Motors Corp.,* 266 N.J.Super. 222, 628 A.2d 1108 (1993), *holding modified by Rosenblit v. Zimmerman,* 166 N.J. 391, 766 A.2d 749 (2001) (holding that tort remedy for intentional spoliation was not novel but included under elements of tort of fraudulent concealment); *Coleman v. Eddy Potash, Inc.,* 120 N.M. 645, 905 P.2d 185 (1995), *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.,* 131 N.M. 272, 34 P.3d 1148 (2001); *Oliver v. Stimson Lumber Co.,* 297 Mont. 336, 993 P.2d 11 (1999); *Smith v. Howard Johnson Co., Inc.,* 67 Ohio St.3d 28, 615 N.E.2d 1037 (1993).

716

West Virginians have a fundamental constitutional right to use the State's court system to seek justice. *See* W.Va. Const., Art. III, § 17. This Court has recognized that "[b]asic to the administration of justice is the search for the truth." *Page v. Columbia Natural Resources, Inc.*, 198 W.Va. 378, 386, 480 S.E.2d 817, 825 (1996). The search for truth breaks down, however, when parties do not have the opportunity to adduce all relevant evidence at trial.[12] "[S]poliation ... undermines the search for truth and fairness by creating a false picture of the evidence before the trier of fact." *Cedars–Sinai Medical Center v. Superior Court*, 18 Cal.4th 1, 9, 74 Cal.Rptr.2d 248, 253, 954 P.2d 511, 516 (Cal.1998). Also, it "may leave the trial record incomplete, may impact the apparent relevancy of other evidence, and may increase litigation costs as litigants scramble to 'reconstruct the spoliated evidence or to develop other evidence, which may be less accessible, less persuasive, or both.'" Levine, 104 W.Va. L.Rev. at 420, *quoting. Cedars–Sinai Medical Center v. Superior Court*, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511, 515 (1998) (footnote omitted). Therefore, "[d]estroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action." *Cedars–Sinai Medical Center*, 18 Cal.4th at 8, 74 Cal. Rptr.2d at 252, 954 P.2d at 515.

For these reasons, intentional spoliation of evidence has been rightly characterized as highly improper and unjustifiable. *See Coleman*, 120 N.M. at 649, 905 P.2d at 189 ("[T]he intentional destruction of potential evidence in order to disrupt or defeat another person's right of recovery is highly improper and cannot be justified."); *Cedars–Sinai Medical Center*, 18 Cal.4th at 4, 74 Cal.Rptr.2d at 249, 954 P.2d at 512 (Intentional spoliation of evidence "is a grave affront to the cause of justice and deserves our

unqualified condemnation."); Wilhoit, 46 UCLA L.Rev. at 663–64 ("[T]here is a need to condemn a party who takes advantage of the adversarial system by destroying evidence that is essential to an adverse party's lawsuit. . . . Likewise, in order to preserve the integrity of the adversarial system, courts must deter parties from destroying evidence that may weaken their cases." (Footnote omitted)). Simply put, such highly improper and unjustifiable conduct ought to be actionable.

 In defining the parameters of the tort of intentional spoliation of evidence we look to the several states that currently recognize this tort. Intentional spoliation of evidence is defined as "the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." *Coleman*, 120 N.M. at 649, 905 P.2d at 189.

Most states that have adopted the tort have agreed that intentional spoliation of evidence consists of the following elements: (1) pending or probable civil litigation, (2) knowledge of the spoliator that the litigation is pending or probable, (3) willful destruction of evidence, (4) intent of the spoliator to interfere with the victim's prospective civil suit, (5) a causal relationship between the evidence and the inability to prove the lawsuit, and (6) damages. Levine, 104 W.Va.L.Rev. at 422 (footnotes omitted). *See, e.g., Coleman*, 120 N.M. at 649, 905 P.2d at 189 ("In order to prevail on an intentional spoliation of evidence theory, a plaintiff must allege and prove the following: (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on part of the defendant to disrupt or defeat the lawsuit; (5) a causal relation-

---

**12.** In Syllabus Point 4 of *Page, supra,* we held that "[i]t is against substantial public policy of West Virginia to discharge an at-will employee because such employee has given or may be called to give truthful testimony in a legal action." In support of our holding, we explained that,

 a reasonable employer should be aware that any attempt to interfere with the process of

obtaining truthful testimony, by either intimidating a potential witness/employee prior to his or her testimony or retaliating against such witnesses/employee thereafter, violates the clear and substantial public policy of this State.

198 W.Va. at 386–87, 480 S.E.2d at 825–26.

ship between the act of spoliation and the inability to prove the lawsuit; and (6) damages."(Citations omitted)); *Oliver v. Stimson Lumber Company,* 297 Mont. at 352, 993 P.2d at 22 ("[I]ntentional spoliation of evidence consists of the following elements: (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the intentional destruction of evidence designed to disrupt or defeat the potential lawsuit; (4) disruption of the potential lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages."(Citation omitted)); *Smith v. Howard Johnson Company, Inc.,* 67 Ohio St.3d at 29, 615 N.E.2d at 1038 ("[T]he elements of a claim for interference with or destruction of evidence are (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]").

 Therefore, we hold that the tort of intentional spoliation of evidence consists of the following elements: (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages. Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The spoliator must overcome the rebuttable presumption or else be liable for damages.

██ We caution that the party injured by spoliation must show more than the fact that potential evidence was intentionally destroyed. The gravamen of the tort of intentional spoliation is the *intent to defeat a person's ability to prevail in a civil action.*

Therefore, it must be shown that the evidence was destroyed with the specific intent to defeat a pending or potential lawsuit. "The intent with which tort liability is concerned ... is an intent to bring about a result which will invade the interests of another in a way that the law forbids." *Prosser & Keeton on Torts,* § 8 at 36 (5th ed.1984). *See also Torres v. El Paso Elec. Co.,* 127 N.M. 729, 987 P.2d 386, 405 (N.M.1999) ("[W]e believe that the tort recognized in *Coleman* [*v. Eddy Potash, Inc., supra* ] seeks to remedy acts taken with the sole intent to maliciously defeat or disrupt a lawsuit.").

██ The rule for the determination of compensatory damages in intentional spoliation actions shall be the same as that set forth above for use in actions where evidence was negligently spoliated by a third party. Finally, in addition to compensatory damages, punitive damages may be awarded in cases where evidence was intentionally spoliated. This Court has held:

> In actions of tort, where ... willful ... conduct ... affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.

Syllabus Point 4, in part, *Mayer v. Frobe,* 40 W.Va. 246, 22 S.E. 58 (1895). This Court has recognized that punitive damage awards achieve a number of important objectives. "Among the primary ones are: (1) to punish the defendant; (2) to deter others from pursuing a similar course; and, (3) to provide additional compensation for the egregious conduct to which the plaintiff has been subjected." *Harless v. First Nat. Bank in Fairmont,* 169 W.Va. 673, 691, 289 S.E.2d 692, 702 (1982). These objectives certainly may be applicable when a person intentionally destroys evidence for the purpose of defeating a lawsuit.

## IV.

## CONCLUSION

For the reasons set forth above, we answer the certified questions as follows:

1. Whether West Virginia recognizes spoliation of evidence as a stand-alone

tort when the spoliation is the result of the negligence of a party to a civil action.

ANSWER: No.

2. Whether West Virginia recognizes spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a third party, and the third party had a special duty to preserve the evidence.

ANSWER: Yes.

3. Whether West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party.

ANSWER: Yes.

Certified Questions Answered.