## SCOTT DIANA *v.* NETJETS SERVICES, INC., ET AL.

Superior Court, Judicial District of New Haven
File No. CV-07-5011701

Memorandum filed December 12, 2007

*Trotta, Trotta & Trotta*, for the plaintiff.

*Diserio Martin O'Connor & Castiglioni LLP*, for the defendant Atlantic Aviation Flight Services, Inc., et al.

BELLIS, J.

I

FACTS

The plaintiff, Scott Diana, alleges the following facts in his amended complaint. On or about May 13, 2005, Diana was at Hartford Brainard Airport in Hartford for a flight lesson, when he was struck and injured by the wing of an aircraft while walking with his flight instructor. The aircraft was operated by two airmen[1] employed by defendant NetJets Services, Inc., and, or, defendant NetJets Aviation, Inc. (NetJets).[2] The complaint further alleges that the identity of the two airmen is unknown to the plaintiff, as is the tail number of the aircraft that struck Diana. Subsequently, Diana's instructor filed an incident report, which included the tail number of the aircraft that struck Diana, and delivered it by hand to defendant Atlantic Aviation Flight Services, Inc., and, or, defendant Brainard Airport Services, Inc.[3] Agents or employees of the Atlantic defendants intentionally discarded it; consequently, the Federal Aviation Administration was never notified of the incident and did not conduct an investigation thereof.

On May 22, 2007, Diana commenced the present action against NetJets, Atlantic and Midwest Air Traffic Control Services, Inc. (Midwest). The Atlantic defendants filed a motion to strike counts three and four of

---

[1] The amended complaint refers to the two airmen as John Doe 1 and John Doe 2 defendants. However, they are neither listed as defendants on the summons, nor does the complaint contain any separate count of negligence against them.

[2] NetJets Services, Inc., and NetJets Aviation, Inc., are named as separate defendants in Diana's complaint. Both NetJets Services, Inc., and NetJets Aviation, Inc., are based at the same address in Farmington, and both are represented by the same counsel.

[3] The third count of the amended complaint claims intentional spoliation of evidence against Atlantic Aviation Flight Services, Inc., also known as Brainard Airport Services, Inc. The fourth count of the amended complaint claims intentional spoliation of evidence against Brainard Airport Services,

the amended complaint on the ground that third party intentional spoliation of evidence is not a cognizable cause of action and, alternatively, that the plaintiff has failed to state all the essential elements of third party spoliation of evidence.

## II

## DISCUSSION

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). The court takes the facts "to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 132, 913 A.2d 415 (2007). "[G]rounds other than those specified should not be considered . . . ." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 259, 765 A.2d 505 (2001).

"A motion to strike is the proper vehicle to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) *Chenarides* v. *Bestfoods Baking Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-03-0197877 (March 30, 2005) (*Hiller, J.*) (39 Conn. L. Rptr. 90); see also *Anastasia* v. *Mitsock*, Superior Court, judicial district of New Haven, Docket No. CV-05-4012156 (December 12, 2006) (*Jones, J.*) (42

Inc., doing business as Atlantic Aviation. They will be referred to collectively as Atlantic or the Atlantic defendants.

Conn. L. Rptr. 496); *Bakker* v. *Brave Industries, Inc.*, 48 Conn. Sup. 70, 76, 829 A.2d 928 (2002).

The Atlantic defendants move to strike counts three and four[4] on the ground that Diana fails to state a cognizable cause of action for which relief may be granted— first, because Connecticut does not recognize claims of third party intentional spoliation of evidence and, second, because even if Connecticut were to recognize this cause of action, Diana does not sufficiently allege all the necessary elements.

A

The Tort of Intentional Spoliation of Evidence

Spoliation of evidence was first expressly recognized as a tort by the California District Court of Appeals in 1986;[5] since then, a handful of other jurisdictions have recognized it as well.[6] Our Supreme Court recognized intentional spoliation of evidence as a cognizable, independent tort in *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 905 A.2d 1165 (2006).

---

[4] Counts three and four are identical, except for the defendant named in each.

[5] See *Smith* v. *Superior Court*, 151 Cal. App. 3d 491, 198 Cal. Rptr. 829 (1984). The Supreme Court of California later held that California does not recognize a tort for spoliation of evidence. See *Cedars-Sinai Medical Center* v. *Superior Court*, 18 Cal. 4th 1, 954 P.2d 511, 74 Cal. Rptr. 2d 248 (1998) (no tort for first party spoliation); see also *Temple Community Hospital* v. *Superior Court*, 20 Cal. 4th 464, 976 P.2d 223, 84 Cal. Rptr. 2d 852 (1999) (no tort for third party spoliation).

[6] About thirty jurisdictions have addressed the question of whether to recognize a cause of action for spoliation of evidence. Eight jurisdictions have clearly chosen to do so. See *Smith* v. *Atkinson*, 771 So. 2d 429 (Ala. 2000) (third party negligent spoliation); *Hazen* v. *Anchorage*, 718 P.2d 456 (Alaska 1986) (intentional spoliation); *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 905 A.2d 1165 (2006) (first party intentional spoliation); *Holmes* v. *Amerex Rent-A-Car*, 710 A.2d 846 (D.C. 1998) (negligent or reckless spoliation); *Oliver* v. *Stimson Lumber Co.*, 297 Mont. 336, 993 P.2d 11 (1999) (third party intentional and negligent spoliation); *Coleman* v. *Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185 (1992) (intentional spoliation), overruled in part on other grounds by *Delgado* v. *Phelps Dodge Chino, Inc.*, 131 N.M. 272, 279 & n.3, 34 P.3d 1148 (2001); *Smith* v. *Howard Johnson Co.*, 67 Ohio St. 3d 28, 615 N.E.2d 1037 (1993) (intentional spoliation);

The relevant facts of *Rizzuto* are as follows. In December 1996, the plaintiff, Leandro Rizzuto, climbed a ladder manufactured by Davidson Ladders, Inc., while he was shopping at a Home Depot store in Norwalk. The ladder collapsed suddenly and Rizzuto fell to the floor, incurring serious injuries. He filed a product liability action against Davidson Ladders, Inc., and Home Depot USA, Inc., in August, 1997, alleging that the ladder had been manufactured and designed improperly, and had been sold without proper warnings. Thereafter, Rizzuto asked the defendants repeatedly to preserve the ladder and to allow him to examine it. In 1998, the defendants' expert examined the ladder and concluded that it was not defective. The defendants then destroyed the ladder, never affording Rizzuto an opportunity to inspect it. Id., 227–28.

The Supreme Court chose to recognize the tort of intentional spoliation of evidence as an independent cause of action, because "the existing nontort remedies are insufficient to compensate victims of spoliation and to deter future spoliation when a first party defendant destroys evidence intentionally with the purpose and effect of precluding a plaintiff from fulfilling his burden of production in a pending or impending case." Id., 243. The court defined the intentional spoliation of evidence as "the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." (Internal quotation marks omitted.) Id. The *Rizzuto* court clearly laid out the essential elements of an intentional spoliation of evidence claim: "(1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plain-

*Hannah* v. *Heeter*, 213 W. Va. 704, 584 S.E.2d 560 (2003) (first party and third party intentional spoliation and third party negligent spoliation).

tiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." Id., 244–45.

In *Rizzuto*, the court recognized the tort "when a *first party* defendant destroys evidence intentionally . . . ." (Emphasis added.) Id., 234–35. The court, however, chose to express "no opinion as to whether this state recognizes a cause of action for *third party* spoliation of evidence." (Emphasis added.) Id., 235 n.5. The court cited *Dowdle Butane Gas Co.* v. *Moore*, 831 So. 2d 1124 (Miss. 2002), to differentiate first party and third party spoliators. *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 234 n.5. "A first party spoliator is a party to the underlying action who has destroyed or suppressed evidence relevant to the plaintiff's claims against that party. . . . A third-party spoliator is oftentimes a stranger to the underlying litigation but . . . may be a party to the underlying litigation. The third party spoliator is alleged to have destroyed evidence relevant to the plaintiff's causes of action against another defendant(s). In other words, a third-party spoliator is a party not alleged to have committed the underlying tort as to which the lost or destroyed evidence related." (Citations omitted; internal quotation marks omitted.) *Dowdle Butane Gas Co.* v. *Moore*, supra, 1128–29.[7]

In the present case, the Atlantic defendants assert that they are third party spoliators because Diana alleges that they spoliated evidence but does not allege that Atlantic "had any part in the underlying negligence

---

[7] A defendant may also be both a first party and a third party spoliator. In *Temple Community Hospital* v. *Superior Court*, 20 Cal. 4th 464, 469, 976 P.2d 223, 84 Cal. Rptr. 2d 852 (1999), the California Supreme Court described hybrid spoliators. The defendant hospital had allegedly destroyed evidence relevant to the plaintiff's causes of action against both it and other defendants. The spoliation claim was a first party claim to the extent that it was based on the allegation of intentional destruction of evidence relevant to the plaintiff's claims against the hospital and a third party claim to the extent the destruction was relevant to the plaintiff's claims against the other defendants.

that caused [the] [p]laintiff's personal injuries." Diana counters that the Atlantic defendants are first party spoliators because he filed one action against all the tortfeasors and has not attempted to bring a separate action against Atlantic for intentionally destroying the incident report. Although it is true that all the defendants are parties to this lawsuit, no claim other than the intentional spoliation of evidence claim has been leveled against the Atlantic defendants. *Rizzuto* speaks in terms of " 'causes of action' " and " 'claims' "—not lawsuits. *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 234 n.5. The evidence the Atlantic defendants allegedly destroyed is relevant to Diana's causes of actions against the other defendants, NetJets and Midwest. Diana does not allege that the Atlantic defendants destroyed or suppressed evidence relevant to his claims against the Atlantic defendants. The Atlantic defendants, therefore, are third party spoliators.

Atlantic argues that the counts against them should be stricken, as there is no cause of action for third party intentional spoliation of evidence in this state. Diana maintains that a cause of action for third party spoliation should stand, even if the tort has not yet been recognized.

Our Supreme Court, as noted previously, gave no opinion as to whether it would recognize a cause of action for third party intentional spoliation of evidence. Id., 235 n.5. There is no other Connecticut appellate authority on either first party or third party spoliation claims, and, prior to *Rizzuto*, the few trial courts that had been presented with the issue had declined to recognize a cause of action for spoliation of evidence.[8]

---

[8] In *Reilly* v. *D'Errico*, Superior Court, judicial district of New Haven, Docket No. CV-93-0346095 (September 22, 1994) (*Hartmere, J.*) (12 Conn. L. Rptr. 457), the court granted the defendants' motion to strike the spoliation of evidence claims on the ground that Connecticut did not recognize the cause of action. The court did not distinguish between first party and third party spoliators.

Atlantic suggests that because the Supreme Court found the cause of action with regard to first party spoliators, specifically, and there is no other binding authority, this court should follow pre-*Rizzuto* trial court rulings involving spoliation claims. This court declines to follow the pre-*Rizzuto* decisions, which were decided in the absence of any appellate authority. This court, unlike its predecessors, is not called on to rule on this issue in darkness but may be guided by the illumination of the Supreme Court's reasoning in *Rizzuto*.

Atlantic cites *Reilly* v. *D'Errico*, Superior Court, judicial district of New Haven, Docket No. CV-93-0346095 (September 22, 1994) (*Hartmere, J.*) (12 Conn. L. Rptr. 457), and *MetLife Auto & Home* v. *Joe Basil Chevrolet, Inc.*, 303 App. Div. 2d 30, 753 N.Y.S.2d 272 (2002), aff'd, 1 N.Y.3d 478, 807 N.E.2d 865, 775 N.Y.S.2d 754 (2004),to support its position that this state should not recognize a cause of action for intentional third party spoliation

In *Regency Coachworks* v. *General Motors Corp.*, Superior Court, judicial district of Hartford, Docket No. CV-95-554389 (June 26, 1996) (*Wagner, J.*) (17 Conn. L. Rptr. 235), the trial court refused to recognize a cause of action for spoliation of evidence. Although the spoliator was a third party, the ruling did not differentiate between first party and third party spoliators, nor did it differentiate between negligent and intentional spoliation.

Atlantic cites *Fontanella* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. 369092 (August 26, 1998) (*Blue, J.*) (22 Conn. L. Rptr. 553), as a ruling that specifically addresses third party spoliators. The court in that case, however, discussed negligent spoliation and declined to decide the question of whether negligent spoliation of evidence is an actionable tort (the question could be left unanswered because of the facts of the case—the plaintiff had sold the evidence, an automobile, to the spoliation defendant). See also *Massaro* v. *Yale-New Haven Hospital*, Superior Court, judicial district of New Haven, Docket No. CV-02-0459379 (May 14, 2003) (*Skolnick, J.*) (34 Conn. L. Rptr. 609) ("no supporting authority in Connecticut allowing a cause of action for spoliation of evidence"); *Butler* v. *Buchanan Marine, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-95-0149347S (May 29, 1998) (*Mintz, J.*) (22 Conn. L. Rptr. 213) ("[i]n this state, 'spoliation' refers to a rule of evidence, and is not a cause of action"); *Moisei* v. *Pilkington Barnes-Hind, Inc.*, Superior Court, Docket No. CV-96-0561712, 1997 WL 539784 (August 21, 1997) (*Aurigemma, J.*) (no cause of action for first party intentional spoliation of evidence).

of evidence. Diana emphasizes the Supreme Court's authority to recognize new causes of action and the concern of the *Rizzuto* court of the inequity that could result if a plaintiff is unable to recover due to a defendant's wrongful acts.

In *Reilly*, the court declined "to recognize a cause of action for spoliation of evidence . . . for the following reasons. First, a remedy for discovery violations already exists in Connecticut. In the case of discovery violations, Connecticut courts may, on motion, make such order as the ends of justice require. . . . Second, the inherently speculative nature of the spoliation tort militates against adopting such a cause of action. . . . Determining what the absent evidence may have shown borders on guesswork. . . . In addition, uncertainty exists as to what amount in damages, if any, the plaintiffs would be entitled to receive. . . . Third, the court declines to adopt the spoliation tort for the policy reasons of finality of judgments and judicial economy." (Citations omitted; internal quotation marks omitted.) *Reilly* v. *D'Errico*, supra, 12 Conn. L. Rptr. 460.

In *MetLife Auto & Home*, a New York court declined to recognize the tort of third party spoliation of evidence[9] on the ground that "the benefits of recognizing a tort cause of action, in order to deter third party spoliation of evidence and compensate victims of such misconduct, are outweighed by the burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies . . . . We thus decline to recognize an inherently speculative and hopelessly circular cause of action . . . ." (Citation omitted; internal quotation marks omitted.) *MetLife*

---

[9] The question in *MetLife Auto & Home* was whether to recognize a tort of third party negligent spoliation of evidence.

*Auto & Home* v. *Joe Basil Chevrolet, Inc.,* supra, 303 App. Div. 2d 43–44.[10]

Our Supreme Court addressed these concerns in *Rizzuto* in the context of first party spoliators. First, the *Rizzuto* opinion recognizes that other remedies do exist, such as allowing the finder of fact to draw a negative inference from spoliation (*"Beers* inference," pursuant to *Beers* v. *Bayliner Marine Corp.,* 236 Conn. 769, 675 A.2d 829 [1996]), judicial sanctions (see Practice Book § 13-14), criminal sanctions (see General Statutes §§ 53a-155 [a] and 53a-146 [1], making it a felony to destroy or to tamper with evidence), and professional sanctions for attorneys who engage in the intentional spoliation of evidence (see Practice Book §§ 2-37 and 2-44; Rules of Professional Conduct 8.4). *Rizzuto* v. *Davidson Ladders, Inc.,* supra, 280 Conn. 236–43. The court, nevertheless, found these remedies lacking: "Because the *Beers* inference cannot be invoked by a victim of spoliation who has been deprived of the concrete evidence necessary to establish a prima facie case, we conclude that it provides an insufficient compensatory and deterrent effect under the present circumstances." Id., 239. Likewise, "most of these sanctions are of no use to a plaintiff who is unable to fulfill his or her burden of production as a result of a defendant's intentional spoliation of evidence." Id., 240. Furthermore, "[a]lthough these sanctions provide a limited deterrent effect, with the exception of an entry of default judgment, none of them attempts to compensate the plaintiff for the loss of his underlying civil action." Id., 242.

Second, opponents of the tort emphasize that its inherently speculative nature militates against adopting it. "[I]t seems likely that in a substantial proportion of spoliation cases the fact of harm will be irreducibly

[10] See also *Cedars-Sinai Medical Center* v. *Superior Court,* 18 Cal. 4th 1, 8–13, 954 P.2d 511, 74 Cal. Rptr. 2d 248 (1998).

uncertain. . . . [T]here will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor. Without knowing the content and weight of the spoliated evidence, it would be impossible . . . to meaningfully assess what role the missing evidence would have played in the determination of the underlying action. . . . Not only the fact of injury, but also the element of causation would be an intractable element of proof. Assuming injury, the extent to which the destruction of evidence caused a different result in the underlying litigation frequently would be a matter of speculation . . . ." (Citation omitted; internal quotation marks omitted.) *Temple Community Hospital* v. *Superior Court*, 20 Cal. 4th 464, 474, 976 P.2d 223, 84 Cal. Rptr. 2d 852 (1999).

"We agree that this difficulty of proof is endemic to the tort of spoliation," our Supreme Court wrote, "but we disagree that it should preclude recognition of the tort. . . . The difficulty in determining the harm caused by a defendant's spoliation of evidence is attributable solely to the defendant's intentional bad faith litigation misconduct. If the plaintiff could establish precisely what the spoliated evidence would have shown, the tort would be unnecessary because the plaintiff would possess sufficient evidence to satisfy his burden of production in the underlying litigation." (Citation omitted; internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 245.

Our Supreme Court explained that the burden of proof it mandated in *Rizzuto* offset the inherent difficulty inherent of proof in a spoliation claim: "In light of the difficulties of proof inherent in the tort of intentional spoliation of evidence, we next clarify the plaintiff's burden of proof with respect to causation and damages. To establish proximate causation, the plaintiff must

prove that the defendants' intentional, bad faith destruction of evidence rendered the plaintiff unable to establish a prima facie case in the underlying litigation. . . . Once the plaintiff satisfies this burden, there arises a rebuttable presumption that but for the fact of the spoliation of evidence the plaintiff would have recovered in the pending or potential litigation . . . ." (Citations omitted; internal quotation marks omitted.) Id., 246–47.

Third, as with proof, damages in a spoliation case are speculative. "Even if the fact of harm can be ascertained or assumed, it would be virtually impossible to measure the degree of harm and the precise extent of damages, and any attempt to do so would involve inherent and irreducible speculation . . . . Moreover, there is the ancillary problem of appropriately adjusting the damages to take into account the estimated (or assumed) likelihood of success of the underlying claim or defense . . . ." (Citations omitted.) *MetLife Auto & Home* v. *Joe Basil Chevrolet, Inc.*, supra, 303 App. Div. 2d 42.

The *Rizzuto* court "acknowledge[s] that, [t]he most difficult aspect of a spoliation of evidence tort is the calculation of damages. . . . In determining the proper measure of damages, we are guided by the purpose of compensatory damages, which is to restore an injured party to the position he or she would have been in if the wrong had not been committed. . . . To restore a victim of intentional spoliation of evidence to the position he or she would have been in if the spoliation had not occurred, the plaintiff is entitled to recover the full amount of compensatory damages that he or she would have received if the underlying action had been pursued successfully. . . . We recognize that various jurisdictions have criticized this measure of damages because there is the potential that the plaintiff would benefit more in an instance of spoliation than he might have in the underlying suit. . . . We conclude, however, that

the risk of a windfall to the plaintiff sufficiently is minimized by requiring the plaintiff to prove that the defendant spoliated evidence intentionally with the purpose and effect of precluding the plaintiff's ability to establish a prima facie case in the underlying litigation and, further, by permitting the defendant to rebut the presumption of liability that arises upon this showing." (Citations omitted; internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 248–49.

Fourth, opponents have also warned that the tort of intentional spoliation of evidence would impose "extraordinary precautions by individuals and businesses to preserve needlessly any evidence that might be relevant to future litigation . . . ." Id., 250. The Supreme Court answered this charge by noting that parties to a pending or impending civil action already have common-law and statutory duties to retain evidence. Id., 250–51.

"Finally, there is the risk of generating a spiral of contemporaneous or subsequent collateral or satellite litigation based on allegations of spoliating conduct committed not only in advance of, but also throughout, the prosecution of the underlying claim . . . ." (Citations omitted.) *MetLife Auto & Home* v. *Joe Basil Chevrolet, Inc.*, supra, 303 App. Div. 2d 42. In such litigation, juries could be confused by the re-presentation of evidence in the spoliation action or by having to differentiate between the underlying action and the spoliation action if they were tried at once. Id., 43.

Our Supreme Court dismissed this assertion—"with respect to the risk of meritless spoliation actions, we do not agree . . . that recognition of the tort will result in an uncontrollable influx of frivolous claims. . . . [T]he limited scope of the tort, the difficulty of proof inherent in the tort and the safeguards embodied in our

rules of practice . . . are sufficient to deter the filing of such meritless actions. Lastly, the tort of intentional spoliation of evidence, as defined in this state, poses no risk of jury confusion, inconsistent verdicts or duplicative litigation because the underlying claim and the tort of intentional spoliation of evidence are mutually exclusive. In other words, a plaintiff who possesses sufficient evidence to present his underlying claim to the jury necessarily is unable to state a claim for intentional spoliation of evidence, and vice versa. Thus, the risk of jury confusion, inconsistent verdicts or duplicative litigation is eliminated entirely." (Citation omitted.) *Rizzuto* v. *Davidson Ladders, Inc.,* supra, 280 Conn. 251.

Much of the reasoning that our Supreme Court applied to first party intentional spoliation of evidence may be applied to third party intentional spoliation. The strongest argument for recognizing a tort of intentional third party spoliation of evidence is the lack of remedies available to third party spoliation victims. "Third-party spoliation is particularly problematic because not all of the litigation-related remedies for spoliation apply to third parties." *Dowdle Butane Gas Co.* v. *Moore,* supra, 831 So. 2d 1128; see also *Smith* v. *Atkinson,* 771 So. 2d 429, 438 (Ala. 2000) ("[j]ury charges that presume missing evidence weighs against the spoliator, and discovery sanctions, both of which are available when spoliation is charged against an opposing party, are not available to remedy the injustice caused by spoliation when the spoliator is a third party"); *Temple Community Hospital* v. *Superior Court,* supra, 20 Cal. 4th 476 ("[i]n the case of first party spoliation . . . sanctions serve not only to deter spoliation of evidence, but may promote compensation for the underlying injury in spite of the absence of the spoliated evidence. The evidentiary inference . . . as well as most discovery sanctions . . . are not available when a person who is not

a party to the litigation and who is not an agent of a party intentionally has destroyed evidence"); Id., 483 (Kennard, J., dissenting) ("[B]ecause the nontort remedies for third party spoliation, unlike those for first party spoliation, are not strong and effective deterrents, this factor weighs heavily in favor of recognizing a tort remedy for third party spoliation. . . . Tort law seeks not only to deter wrongful conduct but also to compensate those injured by such conduct. The nontort remedies for third party spoliation do not, however, compensate the victim for the harm caused by the destruction of evidence, unlike the nontort remedies for first party spoliation."); *Oliver* v. *Stimson Lumber Co.*, 297 Mont. 336, 345, 993 P.2d 11 (1999) ("[w]hen evidence is in the possession of a third party, however, the various sanctions available to the trial judge are inapplicable"). Several jurisdictions, considering the disparity in available remedies, have even adopted a tort of third party spoliation of evidence while refusing to adopt one of first party spoliation. See *Smith* v. *Atkinson*, supra, 429; *Hibbits* v. *Sides*, 34 P.3d 327 (Alaska 2001); *Kimball* v. *Publix Super Markets, Inc.*, 901 So. 2d 293 (Fla. 2005); *Oliver* v. *Stimson Lumber Co.*, supra, 336; see also *Hannah* v. *Heeter*, 213 W. Va. 704, 584 S.E.2d 560 (2003) (allowing first party and third party intentional spoliation claims but only third party negligent spoliation claims).[11]

Another difference between first party and third party spoliators is that a third party may or may not have a

---

[11] See also *Glotzbach* v. *Froman*, 854 N.E.2d 337, 338–40 (Ind. 2006) (Indiana does not recognize first party spoliation cause of action but recognizes very limited third party spoliation cause of action and rejects third party spoliation claim in context of case); *Poynter* v. *General Motors Corp.*, 476 F. Sup. 2d 854 (E.D. Tenn. 2007) (Tennessee does not recognize first party spoliation claims but may not reject third party spoliation claims).

Connecticut is the only jurisdiction out of the eight jurisdictions recognizing spoliation causes of action; see footnote 6; that has recognized a cause of action for first party spoliation of evidence but not for third party spoliation of evidence.

duty to preserve evidence. This raises the problem of "placing a third party under a duty to preserve evidence for the benefit of strangers and in anticipation of as-yet-uncommenced litigation . . . ." (Citations omitted.) *MetLife Auto & Home* v. *Joe Basil Chevrolet, Inc.,* supra, 303 App. Div. 2d 39 (involving negligent destruction of evidence rather than intentional, bad faith destruction). "More problematic is the notion of holding a third party liable for destroying or discarding its own property under such circumstances; such liability would in our view constitute an unwarranted infringement on property rights . . . ." (Citations omitted.) Id.

As noted by the court in *Rizzuto,* parties to litigation have a duty to preserve evidence. *Rizzuto* v. *Davidson Ladders, Inc.,* supra, 280 Conn. 250–51. It did not discuss what duties nonparties might have. The District of Columbia Court of Appeals, in deciding to recognize a cause of action for negligent and reckless spoliation of evidence, specified that it was not creating a general duty on the party of third parties to preserve evidence. See *Holmes* v. *Amerex Rent-a-Car,* 710 A.2d 846, 849 (D.C. 1998). "Absent some special relationship or duty rising by reason of an agreement, contract, statute, or other special circumstance, the general rule here is that there is no duty to preserve possible evidence for another party . . . ." (Internal quotation marks omitted.) Id.[12]

The Alabama Supreme Court also found a third party to have a duty to preserve evidence when it accepted responsibility for the evidence: "When a third party has knowledge of a pending or potential lawsuit and accepts responsibility for evidence that would be used in that lawsuit, it should be held liable for damage resulting

---

[12] The court in *Holmes* assumed that such a duty existed for the purpose of answering the certified question that was presented to the court in that case. See *Holmes* v. *Amerex Rent-a-Car,* supra, 710 A.2d 850.

from the loss or destruction of that evidence." *Smith v. Atkinson*, supra, 771 So. 2d 433. "If the third party does not wish to take responsibility for evidence, it can decline the responsibility, shifting the risk of loss back to the plaintiff." Id.[13]

The essential elements of the tort, as set forth in *Rizzuto*, also minimize the problem of placing an excessive burden on potential spoliation defendants—the third party spoliator must not only be aware of the pending or potential action but must intentionally, in bad faith, destroy the evidence. *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 244–45; see also *Temple Community Hospital* v. *Superior Court*, supra, 20 Cal. 4th 485 (Kennard, J., dissenting) ("It should not be sufficient that the spoliator merely intend to cause the act of spoliation. The spoliator must intend that the act of spoliation affect the outcome of the underlying cause of action to which the evidence is relevant; otherwise stated, the spoliator must intend to harm the spoliation victim's ability to bring or defend a legal claim. Because of this intent requirement, there would be no liability if the missing evidence has been discarded or misplaced in the ordinary course of events."). Thus, recognizing the tort of third party intentional spoliation of evidence will not unduly interfere with the rights of individuals to dispose of their property lawfully, as the *Rizzuto* court has limited the application of the tort to spoliators who are acting intentionally, in bad faith, so as to deprive the plaintiff of his lawsuit.

The arguments, as well as the counterarguments, that the tort of first party spoliation of evidence involves

---

[13] Diana cites *Smith* v. *Atkinson*, supra, 771 So. 2d 429, noting that Atlantic took possession of the incident report and could have refused to do so. But see id., 433 ("a third party's constructive notice of a pending or potential action is not sufficient to force upon the third party the duty to preserve evidence"). *Smith* v. *Atkinson*, supra, 429, may be distinguished from the case at hand, though—it centered on a negligent, not an intentional, spoliation claim.

too much speculation as to both harm and damages and that the tort would engender excess litigation are equally applicable to third party spoliation. See *Temple Community Hospital* v. *Superior Court*, supra, 20 Cal. 4th 474 ("[a]nother consideration that weighed heavily in [*Cedars-Sinai Medical Center* v. *Superior Court*, 18 Cal. 4th 1, 954 P.2d 511, 74 Cal. Rptr. 2d 248 (1998)]— the uncertainty of the fact of harm arising from spoliation—is equally applicable in third party spoliation"); *Temple Community Hospital* v. *Superior Court*, supra, 487 (Kennard, J., dissenting) ("[N]or would a tort remedy for intentional third party spoliation create 'endless' litigation . . . . It would create a single lawsuit between the spoliation victim and the spoliator. . . . [T]here is nothing unique about third party spoliation in its potential for uncertainty in the fact or extent of harm, for almost every tort can present the same uncertainty."). The same factors that mitigate these problems in the first party intentional spoliation of evidence cause of action recognized in *Rizzuto*—namely, the burden of proof; *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 246–47; and the mutual exclusivity of an underlying cause of action and a related spoliation cause of action; id., 251—would also mitigate these problems with a third party cause of action.

A third party cause of action for intentional spoliation is neither more speculative, nor more threatening to judicial economy, than the first party cause of action. Moreover, the burden placed on third parties to preserve evidence in potential or pending litigation would not be overly large because *Rizzuto* narrows the class of potential spoliation defendants to those who knowingly and wilfully destroy evidence with an eye to affecting the outcome of litigation. Finally, our Supreme Court's interest in not seeing plaintiffs deprived of their civil action due to intentional spoliation of evidence suggests that a third party cause of action should be recognized

because of the disparity in available remedies between first party and third party spoliators.

The Atlantic defendants also argue that the holding of *Rizzuto* should be limited to product liability cases and state in their memorandum of law: " 'Because the plaintiff . . . alleg[ed] that the defendants' bad faith intentional spoliation destruction of the ladder deprived him of the evidence he needed to establish a prima facie case of product liability against the defendants . . . the trial court improperly struck the plaintiff's intentional spoliation of evidence claim.' " *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 235. Importantly, the Supreme Court qualified that the new tort was recognized, " 'under the circumstances alleged in the present case . . . .' " Id., 227.

Atlantic's argument has merit. Our Supreme Court did note the ineffectiveness of existing remedies to deter spoliation, particularly in the context of product liability actions.[14]

Moreover, as in *Rizzuto*, most cases addressing spoliation claims involve the destruction of physical evidence.[15] At least one court has emphasized a qualitative

[14] "Moreover, we conclude that these remedies do not adequately deter future intentional, bad faith spoliation of evidence. In a product liability action, the allegedly defective product often is the best if not the only evidence of a product defect. Where the product is in the sole custody or control of the defendant, the possible specter of nontort sanctions may pale in comparison to the costs of a lengthy trial or a substantial award of damages. Indeed, the more defective the product, the stronger the financial incentive to destroy or to dispose of the inculpatory evidence so as to prevent the plaintiff from proving his claim. In other words, under the existing remedies, the more effective the defendant's spoliation conduct, the greater the financial reward." *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 243.

[15] For example, ladders (*Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 225); automobiles (*Smith* v. *Atkinson*, supra, 771 So. 2d 429; *Regency Coachworks* v. *General Motors Corp.*, Superior Court, judicial district of Hartford, Docket No. CV 95 554389 [June 26, 1996] [*Wagner, J.*] [17 Conn. L. Rptr. 245]; *Reilly* v. *D'Errico*, supra, 12 Conn. L. Rptr. 457; *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 846; *MetLife Auto & Home* v. *Joe Basil*

distinction—"[p]hysical evidence is readily capable of being evaluated in terms of being exclusively possessed and being made unavailable, destroyed or altered. Testimonial evidence does not lend itself to being similarly evaluated." *Baker* v. *AIG Claim Services, Inc.*, United States District Court, Docket No. 2:05-CV-141-PRC (N.D. Ind. November 7, 2005). For this reason, "[s]poliation of evidence as a tort action [in Indiana] has been limited to physical evidence, and . . . has not been expanded to include spoliation of testimonial evidence." Id.

Spoliation claims have, however, been recognized in cases other than product liability actions[16] and in cases in which the spoliated evidence was testimonial, not physical. In *Hibbits* v. *Sides*, supra, 34 P.3d 327, the Alaska Supreme Court held that it was an error to dismiss a complaint alleging intentional third party spoliation for failure to state a claim. The spoliated evidence was the amount of drugs in the system of the tortfeasor in the underlying action, which arose from an automobile accident. Id., 328. The alleged spoliator, a police officer, kept the tortfeasor, who had taken drugs, from the accident scene until his condition had improved so that the investigating officer was not alerted to the need to test the tortfeasor's blood or urine for drugs.[17] Id.

*Chevrolet, Inc.*, supra, 303 App. Div. 2d 30); medical records, devices (*Cedars-Sinai Medical Center* v. *Superior Court*, supra, 20 Cal. 4th 464; *Temple Community Hospital* v. *Superior Court*, supra, 20 Cal. 4th 464); miscellaneous equipment (*Dowdle Butane Gas Co.* v. *Moore*, supra, 831 So. 2d 1124; *Oliver* v. *Stimson Lumber Co.*, supra, 297 Mont. 336).

[16] Causes of action were recognized for spoliation in product liability cases in *Smith* v. *Atkinson*, supra, 771 So. 2d 429, *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 225, and *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 846.

[17] *Hibbits* followed *Hazen* v. *Anchorage*, supra, 718 P.2d 463, which held that a plaintiff had a common-law cause of action in tort for intentional interference with a prospective civil action by spoliation of evidence. The evidence was an altered police recording of the plaintiff's arrest. Id., 459; see also *Hannah* v. *Heeter*, supra, 584 S.E.2d 565, in which the spoliated evidence was a destroyed audiotape.

A Florida court allowed a plaintiff to amend her complaint to include a third party intentional spoliation claim in *Kimball* v. *Publix Super Markets, Inc.*, supra, 901 So. 2d 296. *Kimball* presented a fact pattern similar to the one in the case at hand. The plaintiff was struck and injured in a supermarket by another shopper who was driving a motorized cart. Id., 295. Supermarket employees recorded the identity of the reckless "driver" but subsequently lost or discarded the information and, without an identified defendant, the plaintiff was deprived of her tort cause of action. Id.

Finally, in another post-*Rizzuto* trial court case involving a first party intentional spoliation of evidence claim, *Paylan* v. *St. Mary's Hospital Corp.*, Superior Court, judicial district of Waterbury, Docket No. X10-UWY-03-4010269 (September 20, 2007, *Scholl, J.*), the spoliated evidence was testimonial. The court rendered summary judgment in favor of the defendant because the plaintiff had no factual basis for her contention that the defendant hospital had intentionally destroyed a report central to the case by erasing the computer hard drive on which the report was stored.

In the present case, the plaintiff claims that the Atlantic defendants, by discarding the report that is critical evidence, and by failing to file the report with the Federal Aviation Administration so that an investigation would ensue, have deprived him of the ability to establish the identity of the airmen and aircraft involved in the incident, such that he may not be able to prove his prima facie case in negligence. The loss of testimonial evidence in the present case may be just as damaging to a lawsuit as was the loss of the physical evidence, the ladder, in the *Rizzuto* case. Moreover, although the Supreme Court in *Rizzuto* emphasized the ineffectiveness of nontort remedies to deter spoliation of physical evidence in particular, it did not explicitly limit its

holding to product liability, nor is the reasoning of the case only applicable to product liability.

For the foregoing reasons, this court does recognize a cause of action for intentional, third party spoliation of evidence.

B

Has Diana Sufficiently Alleged an Intentional Spoliation of Evidence Claim?

Finally, the court must address the question of whether Diana sufficiently alleges a spoliation claim. Atlantic argues that Diana fails to allege adequately three of the five elements of an intentional spoliation of evidence claim.

The first element of an intentional spoliation of evidence claim is "the defendant's knowledge of a pending or impending civil action involving the plaintiff . . . ." *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 244–45. Atlantic contends that although Diana alleges that Atlantic knew he was injured, Diana does not allege that Atlantic had knowledge of a pending or impending civil action. Diana responds that Atlantic knew that there would be an impending action upon learning of the incident. Significantly, Diana alleges in his amended complaint that having been given the incident report, Atlantic "had knowledge that the [p]laintiff was injured as a result of being struck by an aircraft . . . causing him to sustain severe injuries . . . and that a civil action might result from the incident." When considering a motion to strike, a court takes the facts "to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Sullins* v. *Rodriguez*, supra, 281 Conn. 132. As such, the first element has been met.

Next, Atlantic argues that Diana fails to allege the third element of an intentional spoliation claim, which

is that the defendant acted in bad faith, "that is, with intent to deprive the plaintiff of his cause of action . . . ." *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 245. Atlantic states: "[The] [p]laintiff fails to allege, or even suggest, [that Atlantic] spoliated 'with intent to deprive the plaintiff of his cause of action.' . . . There is not even a suggestion that [Atlantic] would benefit by [the] [p]laintiff['s] failing in his underlying action." This argument is without merit. There is no requirement in *Rizzuto* that the spoliator victim must allege that the spoliator defendant must benefit from the spoliation. Here, the amended complaint clearly alleges that Atlantic "intentionally and/or in bad faith spoliated evidence critical to the plaintiff's pending civil liability claim," i.e., that Atlantic intentionally destroyed the evidence, knowing that it was critical evidence in the plaintiff's lawsuit. The language used by Diana is virtually identical to the allegations on the *Rizzuto* complaint, which alleged that "the defendants . . . intentionally spoliated evidence critical to [the plaintiff's] pending products liability action . . . ." (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 228. The allegations are sufficient to satisfy the requirement that the spoliator intended to deprive the spoliator victim of his cause of action.[18]

---

[18] Diana's allegation uses the language of *Rizzuto*'s spoliation complaint. Although it did not explicitly state that the ladder was destroyed with the intent of depriving the *Rizzuto* plaintiff of his action, the Supreme Court found the allegation to be sufficient. See *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 238 n.7 ("The plaintiff's complaint does not allege explicitly either that the defendants destroyed the ladder in bad faith, or that the plaintiff was unable to satisfy his burden of production without the ladder. The plaintiff's complaint does allege, however, that the defendants destroyed the ladder 'intentionally' and, as a result, 'the plaintiff may not be able to prove his case, and his interest in the [product liability cause] of action . . . will forever be lost.' Further, in his memorandum in opposition to the defendants' motion to strike, the plaintiff claimed that the defendants had destroyed the ladder in bad faith, and that the plaintiff likely would be unable to make out a prima facie case of product liability without the ladder. Accordingly, construing the complaint broadly and consistent with the general theory pursued in the trial court, we conclude that the complaint suffi-

Finally, Atlantic contends that Diana does not allege the fourth element of an intentional spoliation claim— "the plaintiff's inability to establish a prima facie case without the spoliated evidence . . . ." Id., 245. However, Diana alleges that as a result of the spoliation, his case "has been damaged to the point where it can not be established—the airmen or the aircraft involved in said incident, which caused the [p]laintiff's injuries . . . as a result of the . . . spoliation of evidence . . . the [p]laintiff may not be able to prove [his] prima facie case in negligence, and [his] interest in the negligence cause of action will forever be lost." As with the third element, Diana, with respect to this fourth element, tracks the language in the *Rizzuto* complaint almost verbatim: " '[t]he plaintiff's case has been damaged to the point where no expert can conclusively establish the mechanism of the defect which caused the plaintiff's injuries'; and (3) 'as a result of the spoliation, the plaintiff may not be able to prove his case, and his interest in the [product liability cause] of action . . . will forever be lost.' " *Rizzuto* v. *Davidson Ladders, Inc.,* supra, 228.

Atlantic does not specifically challenge the second or fifth elements of Diana's claim; Diana adequately pleads both of these elements. Atlantic, Diana alleges, "discarded" the incident report, and intentionally and, or, in bad faith spoliated evidence. This is sufficient for the second element of an intentional spoliation claim, i.e., that the defendant destroyed evidence. *Rizzuto* v. *Davidson Ladders, Inc.,* supra, 280 Conn. 244. This court may infer that to have discarded the incident report was, for all practical purposes, to have destroyed it.

ciently alleges that the defendants destroyed the ladder in bad faith with the purpose and effect of preventing the plaintiff from establishing a prima facie case of product liability.").

Diana also sufficiently alleges the fifth element, damages. Id., 245. Diana alleges that as a result of the spoliation, his interest in his negligence cause of action will be forever lost. In *Rizzuto*, the plaintiff alleged that "as a result of the spoliation, the plaintiff may not be able to prove his case, and his interest in the [product liability cause] of action . . . will forever be lost." (Internal quotation marks omitted.) Id. 228. Our Supreme Court recognizes that loss of an action results in damages. Id., 236.[19] Therefore, Diana's allegation that he may have lost his interest in his negligence cause of action forever fulfills the fifth element of an intentional spoliation claim.

### III

### CONCLUSION

For the foregoing reasons, this court recognizes a cause of action for third party, intentional spoliation of evidence. The plaintiff has sufficiently pleaded all the elements necessary to state such a claim. Accordingly, the defendants' motion to strike is denied.

---

[19] "The underlying premise for recognition of [the tort of intentional spoliation of evidence] is that a victim of spoliation is entitled to recover compensatory, and possibly punitive, damages for the loss of a prospective lawsuit. . . . The spoliation tort protects a litigant's interest in bringing a prospective cause of action by compensat[ing] the non-spoliating litigant for uninvited interference with the prospective lawsuit resulting from destroyed evidence. . . . [A] prospective civil action . . . is a valuable probable expectancy that the [c]ourt must protect from the kind of interference alleged herein . . . ." (Citations omitted; internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.,* supra, 280 Conn. 236.